## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

MANUEL ALEMAN, RAUL SANCHEZ, and RUBEN PORTILLO DIAZ (together, "Plaintiffs"), and JM RESTAURANT LLC and RACHEL TSE (together, "Defendants"), enter the following CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "Agreement").

WHEREAS, Plaintiffs have filed suit against JM Restaurant LLC d/b/a Jasmine Garden Restaurant (Plaintiffs captioned lawsuit against "JM Restaurant, LLC") and Rachel Tse in the United States District Court for Eastern District of Virginia, Civil Docket No. 1:17-cv-00134-AJT-MSN, asserting violations of the Fair Labor Standards Act ("FLSA") (hereafter the "Action"); and

WHEREAS, Defendants deny the allegations in the Action; and

WHEREAS, Plaintiffs and Defendants (collectively, the "Parties") desire to fully and finally resolve all claims between them, including the claims asserted in the Action;

WHEREAS, Defendants proffered to Plaintiffs' counsel Defendants' own assessment and calculations based on the Defendants' business records for employee work schedules with daily logs, overtime and minimum wage calculations, and time cards with Plaintiffs' hours and break-time during the relevant period for which each Plaintiff was employed with Jasmine Garden Restaurant;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. a. Consideration: In consideration for Plaintiffs' promises under this Agreement and complying with its terms, Defendants agree to pay to Plaintiffs and their counsel the aggregate amount of FORTY-FIVE THOUSAND DOLLARS ($45,000.00).

b. The above settlement amount reflects settlement payment of:
  i. $8,800.00 in wages and alleged liquidated damages to MANUEL ALEMAN ($4,400.00 reportable as wages on a W-2 form and subject to applicable withholdings, and $4,400.00 as liquidated damages reportable on a Form 1099),
  ii. $8,800.00 in wages and alleged liquidated damages to RAUL SANCHEZ ($4,400.00 reportable as wages on a W-2 form and subject to applicable withholdings, and $4,400.00 as liquidated damages reportable on a Form 1099),
  iii. $8,800.00 in wages and alleged liquidated damages to RUBEN PORTILLO DIAZ ($4,400.00 reportable as wages on a W-2 form and subject to applicable withholdings, and $4,400.00 as liquidated damages reportable on a Form 1099), and
  iv. settlement payment of a total of $18,600.00 in attorneys' fees and costs to Plaintiffs' counsel Zipin, Amster & Greenberg, LLC.

c. The above amount shall be paid by Defendants to Plaintiffs and their counsel in checks payable to: ZIPIN, AMSTER & GREENBERG, LLC per the following schedule:

| | | | |
|---|---|---|---|
| Payment 1: | June 10, 2017 | - | $7,500.00; |
| Payment 2: | July 10, 2017 | - | $7,500.00; |
| Payment 3: | August 10, 2017 | - | $7,500.00; |
| Payment 4: | September 10, 2017 | - | $7,500.00; |
| Payment 5: | October 10, 2017 | - | $7,500.00; and |
| Payment 6: | November 10, 2017 | - | $7,500.00. |

Plaintiffs acknowledge this is a benefit to which they are not otherwise entitled. Plaintiffs further understand and agree that the following are express conditions precedent to the above payments: (a) Plaintiffs must present the executed Agreement to Lindsay A. Freedman, Esq.; (b) Plaintiffs and their attorney must submit a completed and executed W-9 form from both Plaintiffs and Zipin, Amster & Greenberg, LLC to Lindsay A. Freedman, Esq.; and (c) the dismissal of the Action with prejudice following the granting of the Parties' Joint Motion to Approve Settlement Agreement. The above payments are made in full and final settlement of all Plaintiffs' claims in the Action. If any of the above dates occur before (c), *i.e.*, dismissal of the Action with prejudice following the grating of the Parties' Joint Motion to Approve Settlement Agreement, then the payments will be held in trust pending Court approval of the Agreement.

d. In the event Defendants fails to pay any installment amount in the full amount and in compliance the schedule set forth in paragraph 1(c), Defendants shall be immediately in default under this Agreement. Defendants shall be provided a 15-day period ("cure period"), in which they can cure a default prior to any collection efforts/actions by the Plaintiffs. IN THE EVENT THE DEFAULT IS NOT CURED WITHIN THE CURE PERIOD, DEFENDANTS CONSENT TO THE ENTRY OF A CONFESSED JUDGMENT IN FAVOR OF PLAINTIFFS AND AGAINST DEFENDANTS, JOINTLY AND SEVERALLY, IN THE AMOUNT OF FIFTY THOUSAND DOLLARS AND ZERO CENTS ($50,000.00), LESS ANY AMOUNT ALREADY PAID BY DEFENDANTS TO PLAINTIFFS UNDER THIS AGREEMENT. Following default and the cure period, if Plaintiffs engage in any collection effort including, but not limited to, entry of the Confessed Judgment, litigation to collect and/or prosecute against Defendants for the unpaid balance, Defendants shall reimburse Plaintiffs all reasonable attorney's fees and costs associated with the collection and or prosecution effort.

2. No Consideration Absent Execution of this Agreement: Plaintiffs understands and agree that Plaintiffs would not receive the monies and/or benefits specified in paragraph 1 above except for Plaintiffs' execution of this Agreement and the fulfillment of the promises contained herein. Release of Claims and Covent Not to Sue: Plaintiffs on behalf of themselves and their heirs, executors and assigns agree that she will not in the future file an agency charge, complaint and/or lawsuit against the Defendants pleading any claims barred by this Agreement. Plaintiffs knowingly and voluntarily releases and forever discharges, to

the fullest extent permitted by law, Defendants and their owners, shareholders, affiliates, subsidiaries, divisions, predecessors, insurers and reinsurers, successors and assigns, and their current and former employees, attorneys, officers, executives, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, all of whom are intended third-party beneficiaries of this Agreement (collectively referred to as "Employer"), of and from any and all claims asserted in the Action or that could have been asserted in the Action relating to Plaintiffs' minimum wage, overtime, tips, retaliation, employment or any other employment related, wage compensation-related claims and from all and every manner of action and actions, charges, grievances, cause and causes of action, obligations, demands, liabilities, defenses, suits, debts, dues, sums of money, accounts, covenants, contracts, controversies, agreements, promises, variances, trespasses, tort, damages, judgments, injuries, expenses, of any kind whatsoever, known or unknown, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, or otherwise, which the Plaintiff ever had, now have, or hereafter can, shall, or may have against the Employer, individually or collectively, for unpaid wages, minimum wages, and/or overtime pay, including but not limited to a release of any claims under the following: Title VII of the Civil Rights Act of 1964; The Equal Pay Act; Sections 1981 through 1988 of Title 42 of the United States Code; The Employee Retirement Income Security Act of 1974 ("ERISA"); The Immigration Reform and Control Act; The Americans with Disabilities Act of 1990; The Age Discrimination in Employment Act ("ADEA"); The Worker Adjustment and Retraining Notification Act; The Family and Medical Leave Act; The Fair Labor Standards Act; The Fair Credit Reporting Act; The Sarbanes-Oxley Act; The Occupational Safety and Health Act; The Virginia Human Rights Act -Va. Code Ann. § 2.2-3900 et seq., any regulations thereunder, and any human rights law of any Virginia county or municipality; Virginia Statutory Provisions Regarding Retaliation/Discrimination for exercising rights under the Workers' Compensation Act, Virginia Equal Pay Act; The Virginians With Disabilities Act -Va. Code Ann. § 51.5-1 et seq.; Virginia statutory provisions regarding AIDS testing -Va. Code Ann. § 32.1- 36.1; Virginia statutory provisions regarding wage payments -Va. Code Ann. § 40.1-28.8 et seq.; Virginia statutory provisions regarding occupational safety and health -Va. Code Ann. § 401-49.3 et seq.; Virginia Code Ann. § 8.01-40 regarding unauthorized use of name or picture of any person; Virginia Code Ann. § 40.1-27 regarding preventing employment by others of former employee; Virginia Code Ann. § 40.1-28.7:2 regarding protection of crime victims' rights in employment; Virginia Code Ann. § 18.2-465.1 regarding protection of court witnesses' and jurors' rights in employment; Virginia Code Ann. § 34-29, prohibiting discharge based on indebtedness; Virginia Code Ann. § 44-98, prohibiting interference with employment of members of Virginia National Guard, Virginia Defense Force, or naval militia; Virginia Code Ann. §§ 18.2-499 and 500 (the Virginia statutory conspiracy statutes); any other federal, state or local law, rule, regulation, or ordinance; any public policy, contract, tort, or common law; or any basis for recovering costs, fees, or other expenses including attorney fees incurred in these matters.

This general release also includes any claim for attorneys' fees. The Parties hereby agrees that the General Release set forth in this Agreement is intended to be read as expansively and as broadly as permitted by Virginia and federal law.

3.     Dismissal of the Action and Court Approval: Within five (5) business days following the receipt of the fully executed Settlement Agreement and the first installment payment due under this Agreement, Plaintiffs shall file a Joint Motion with the Court for the Approval of this Settlement of a case seeking damages under the FLSA and for a Dismissal of the litigation, with Prejudice. Plaintiffs understand and agree that this Agreement terminates the Action with prejudice and any and all claims related to the facts giving rise to the Action. The Parties' Joint Motion to approve Settlement Agreement will seek review and approval of this Agreement, as well as the dismissal of the Action with prejudice, to the extent practicable under the law. It is expressly acknowledged and understood that this Paragraph 3 constitutes a material term of this Agreement and that Defendants shall not be obligated to deliver any payments to Plaintiffs and/or their attorneys, unless and until the Parties' Joint Motion to Approve Settlement Agreement is granted and the Action is dismissed with prejudice. In the event that the Court does not approve this Agreement or approves it subject to conditions or modifications which are not acceptable to both Parties, the Parties shall attempt to negotiate in good faith in order to modify this Agreement in a form acceptable to both the Parties and the Court. If any of the payment dates in 1(c) occur before the dismissal of the Action with prejudice following the granting of the Parties' Joint Motion to Approve Settlement Agreement, then the payments will be held in trust pending Court approval of the Agreement.

4.     Acknowledgments and Affirmations: Plaintiffs affirm that each have not, filed or caused to be filed any claim or charge against Defendants other than the Action. Plaintiffs affirm that each have not assigned her claims against Defendants. Plaintiffs affirm that, once the payment required by paragraph 1 above has been made, Plaintiffs will have been paid and/or received all minimum wages and overtime compensation to which Plaintiffs may be entitled from Employer.

5.     Confidentiality & Non-Publication: The Parties acknowledge that the Lawsuit constitutes a public record. However, the Plaintiffs agree that Confidentiality is a material term of this Agreement and agree not to disclose any information regarding the Parties' negotiation of this agreement or the specific terms of this Agreement, and Plaintiff agrees that she may not disclose the terms or existence of this Agreement to anyone other than (1) their spouses, (2) as required by law or (3) as necessary to obtain legal or tax advice from an attorney, accountant or financial professional, provided that they make this confidentiality provision known to her spouse or any such financial or legal professional. If questioned about the status of her claim against Defendants, Plaintiffs are to respond with words to the effect that "the matter has been concluded." Plaintiffs agree this Confidentiality Provision specifically prohibits each Plaintiff from sharing the existence or terms of this Agreement with third-parties including but not limited to current or former employees of Defendant and its successors and assigns. Neither Plaintiffs, nor anyone acting on Plaintiffs' behalf, shall publicize this Agreement to anyone, other than Plaintiffs' immediate family, attorney, and tax advisor.

6.     Non-Disparagement. Plaintiffs' agree to refrain from any defamation, libel, or slander of Defendants, or tortious interference with the contracts and relationships of

4

Defendants. Plaintiffs further agree that they will not act in any manner that might damage the business or reputation of Defendants or their employees. Defendants agree to refrain from any defamation, libel, or slander of Plaintiffs.

7. Governing Law and Interpretation: This Agreement shall be governed by and conformed in accordance with the laws of the Commonwealth of Virginia without regard to its conflict of laws provision.

8. Non-admission of Wrongdoing: The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Employer of any wrongdoing or evidence of any liability or unlawful conduct of any kind.

9. Amendment: This Agreement may not be modified, altered, or changed except in a writing signed by all Parties wherein specific reference is made to this Agreement.

10. Counterpart Signatures: The Parties hereby acknowledge that this Agreement may be executed in counterpart originals with like effect as if executed in a single document. Copies of signatures by fax or scan shall be of equal weight and/or effect as original signatures. This Agreement is effective when counsel for all Plaintiffs and Defendants have executed the Agreement.

11. Joint Participation and Negotiation of Agreement: Both Parties are represented by experienced counsel. The Parties have had the advice of legal counsel and the opportunity to review, comment upon, and negotiate this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any Party. This Agreement shall be construed in light of the fact that the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party and in favor of another.

12. Taxation and Indemnification. Plaintiffs acknowledges and agrees that Employer has made no representations to her regarding the tax consequences of any amounts she may receive pursuant to this Agreement. Plaintiffs agree they are responsible to pay any federal, state or local taxes, which are required by law to be paid with respect to any funds she receives pursuant to this Agreement. Plaintiffs agrees to indemnify and hold Defendants harmless from any claims or demands by any governmental tax agency or authority against Former Employee and/or Former Employer for any tax amounts claimed due from Plaintiffs because this Agreement. Plaintiffs understand and agree that payment of monies herein set forth is in the nature of compensation for any and all claims including, but not limited, alleged wages, liquidates damages, and counsel fees and costs claimed by her. Plaintiffs have full and complete responsibility for any taxes, penalties or assessments of any kind, which may become due in connection with payments made under this Agreement for which Defendants did not withhold taxes.

Plaintiffs understand that certain taxing authorities may, subsequent to this Agreement, characterize payments made under this Agreement in a manner different from that which is intended by the Parties and reflected in this Agreement. Plaintiffs further understand and agree to accept full, complete, sole and entire responsibility for any tax liability, interest or penalty that may be assessed against or incurred by the Defendants as a result of not withholding taxes or any monies paid pursuant to this Agreement, and Plaintiffs agree to indemnify and hold harmless and pay to the Defendants an amount equal to such tax liability, interest or penalty, including Defendants' share of FICA should it be assessed against the Defendants for payments which Defendants issued a Form 1099.

13. Entire Agreement: This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Plaintiffs acknowledge they have not relied on any representations, promises, or agreements of any kind made to Plaintiffs in connection with their decision to accept this Agreement, except for those set forth in this Agreement.

14. PLAINTIFFS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTER THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS PLAINTIFFS HAVE OR MIGHT HAVE AGAINST EMPLOYER.

The Parties or their counsel knowingly and voluntarily sign this Settlement Agreement and Release as of the date(s) set forth below:

ON BEHALF OF DEFENDANTS

JM RESTAURANT LLC D/B/A JASMINE GARDEN RESTAURANT

By: _____  Date: 6/5/17

Print: Jasmine Garden Jm Restaurant LLC

_____  Date: 6/5/17
RACHEL TSE, INDIVIDUALLY

ON BEHALF OF PLAINTIFF

Manuel Aleman  06-13-17
MANUEL ALEMAN  Date

_____  06-13-17
RAUL SANCHEZ  Date

Ruben Portillo Diaz  06-13-17
RUBEN PORTILLO DIAZ  Date